UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY VANDER WAAL, and
ROBERT HARRISON

        Plaintiffs,

v.

AFS TECHNOLOGIES, INC.,

        Defendant.
_____/

Case No. 1:14-CV-94

HON. GORDON J. QUIST

## OPINION REGARDING MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS

Plaintiffs Henry Vander Waal, a Michigan resident, and Robert Harrison, a Connecticut resident, filed their complaint in this case on January 27, 2014, alleging thirteen counts—all seeking declaratory relief—against Defendant AFS Technologies, Inc. (AFS). On January 31, 2014, AFS filed a complaint against Vander Waal and Harrison in the District of Connecticut, asserting coercive claims that mirror certain of the claims for declaratory relief at issue in this case.

AFS has moved to dismiss Counts IV, VI, VII, VIII, IX, X, XI, and XIII (the Harrison breach-of-contract and related claims) or, alternatively, transfer them to the District of Connecticut on the ground that Plaintiffs' filing of those claims in this district was an improper anticipatory filing intended to deprive AFS, the natural plaintiff, of its choice of forum. AFS also contends that the convenience of the parties and witnesses weighs in favor of transferring the specified counts to the District of Connecticut.

For the following reasons, the Court will deny AFS's motion.

## I. BACKGROUND

AFS is a Delaware corporation with its principal place of business in Arizona. (Dkt. # 1 at Page ID 2, ¶ 3.) AFS creates software, including Eagle Software and Raven Software, for companies in the food and beverage industry. AFS acquired the ownership rights in Eagle Software in 2006, when it purchased Distribution Management Systems, Inc. (DMS). (Dkt. # 8-4 at Page ID 88, ¶¶ 5–8.) AFS licenses the Eagle/Raven Software to its customers pursuant to licensing agreements. (*Id.* ¶ 12.) As part of its continuing services to its customers, AFS provides programming updates/modifications, maintenance and consulting specific to the customer's unique business needs. (*Id.* ¶ 17.)

Vander Waal is a Michigan resident and a former employee of AFS, having worked for the company as a programmer from 2007 through 2009. (Dkt. # 10-1 at Page ID 177–78.) Vander Waal worked on AFS projects from his residence in Grand Rapids, Michigan. During his employment with AFS, Vander Waal signed an agreement stating that any intellectual property he created while at AFS belonged to AFS and requiring Vander Waal to refrain from using or disclosing such intellectual property. (Dkt. # 8-4 at Page ID 90, ¶¶ 23–24.) Following Vander Waal's termination from AFS in 2009, Vander Waal started a competing software company and began to service several of AFS's customers with technical support. In 2011, AFS sued Vander Waal in the Western District of Michigan, Case No. 1:11-CV-67, alleging that Vander Waal stole trade secrets and breached his contractual obligations to AFS. (*Id.* at Page ID 91, ¶ 31.) The parties settled the case and entered into a Settlement Agreement dated November 1, 2011, which granted Vander Waal a license to service and make programming changes to Eagle Software for ten AFS customers. (*Id.* at Page ID 91–92, ¶¶ 32–34; dkt. # 10-1 at Page ID 178.)

Within a year after the parties executed the Settlement Agreement, AFS accused Vander Waal of violating the Settlement Agreement. On August 28, 2012, AFS sent Vander Waal's counsel a letter invoking AFS's right to an audit of Vander Waal's financial records and specifying certain actions required of Vander Waal in order to avoid legal action. (Dkt. # 10-1 at Page ID 191–93.) AFS also sent letters to Vander Waal on October 18, 2012 and January 24, 2013, threatening legal action for alleged breaches of the Settlement Agreement. (*Id.* at Page ID 195–200.)

Harrison is a Connecticut resident and was employed by DMS/AFS as a head programmer at its technical support center in Milford, Connecticut, from 1987 through 2013. (*Id.* at Page ID 180.) In connection with his employment, Harrison signed several agreements limiting his post-employment activities, including a non-compete, non-solicitation and confidentiality agreement. (Dkt. # 8-5 at Page ID 103–04, ¶¶ 21–22.) In November 2013, Harrison resigned from AFS and entered into an employment/business relationship with Vander Waal, in which Harrison provides computer programming and software maintenance services for Vander Waal's customers, some of whom are licensees of AFS's Eagle/Raven software.

On December 9, 2013, AFS sent Vander Waal a letter notifying him of Harrison's restrictive agreements with AFS and claiming that Harrison's business relationship with Vander Waal violates those agreements. (Dkt. # 10-1 at Page ID 201–11.) On January 22, 2014, AFS sent a letter to Vander Waal and Harrison's counsel stating that AFS would take legal action on January 27, 2014 unless Vander Waal and Harrison complied with certain demands. (Dkt. # 8-2 at Page ID 83–84.) AFS also provided two draft complaints—one solely against Vander Waal to be filed in the Western District of Michigan, alleging claims based on Vander Waal's activities in Michigan, including breach of the Settlement Agreement, and the other against both Harrison and Vander Wall to be filed in the District of Connecticut, alleging breach of contract and other claims under Connecticut law

3

arising out of Harrison's post-AFS-employment activities and dealings with Vander Waal. (Dkt. ## 8-4, 8-5.) On January 27, 2014—less than two hours after Vander Waal and Harrison filed their complaint in the instant case seeking declaratory relief on all of the claims that AFS intended to assert in both the Michigan and Connecticut draft complaints—their counsel sent an email to AFS's counsel requesting to "discuss what is needed to resolve this issue." (Dkt. # 8-3 at Page ID 86.) AFS filed its complaint in the District of Connecticut on January 31, 2014.

## II. DISCUSSION

AFS requests that the Court either dismiss the Harrison breach of contract and related claims or transfer them to the District of Connecticut pursuant to 28 U.S.C. § 1404(a). AFS also contends that this Court should decline to apply the first-to-file rule. Because courts generally consider the balance of § 1404(a) convenience factors an exception to the first-to-file rule, the Court will address the application of the first-to-file before considering AFS's § 1404(a) argument.

### 1. First-to-File Rule

The first-to-file rule provides that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 9 Wheat. 532, 22 U.S. 532, 535 (1824). This rule is a "'well-established doctrine that encourages comity among federal courts of equal rank.'" *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004) (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)) (italics altered). As the Fifth Circuit has stated, "[c]ourts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999); *see also Motiv Power Sys., Inc. v. Livernois Vehicle Dev., LLC*, Nos. 13-CV-4811 YGR, 4:13-cv-04811, 2014 WL 94370, at *2 (N.D. Cal. Jan. 9, 2014)

("The [first-to-file] rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments."). When the first-to-file rule applies, the court entertaining the later-filed action may, in its discretion, transfer, stay, or dismiss the second action without prejudice, as necessary, to promote the interest of efficiency and judicial economy. *Cedars-Sinai Med. Ctr. v. Shlala*, 125 F. 3d 765, 769 (9th Cir. 1997). The first district court may decline to apply the rule, however, because of "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping," *Zide Sports Shop of Ohio, Inc.*, 16 F. App'x at 437 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)), or if "the Section 1404(a) balance of convenience weighs in favor of the later-filed action." *Motiv Power Sys., Inc.*, 2014 WL 94370, at *2 (citing *Church of Scientology of Cal. v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

Issues concerning the first-to-file rule generally arise when, as in this case, a putative defendant in a coercive action files a declaratory judgment action after the putative plaintiff threatens litigation. Such actions are not always improper. *See Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 301 (4th Cir. 2001) ("Declaratory judgment actions are proper when there is a potential lawsuit."). However, "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Zide Sport Shops of Ohio, Inc.*, 16 F. App'x at 437. If the plaintiff has used a declaratory judgment action in bad faith or as a means of procedural fencing, the court may decline to entertain the first-filed declaratory judgment action. *Id.* at 438; *see also Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939) ("The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.").

AFS argues that the Court should decline to apply the first-to-file rule in this case because it was an anticipatory filing. A filing is anticipatory if it is "filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *Epm'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 276 (2d Cir. 2008) (footnote omitted); *see also Mullinix Packages, Inc. v. Anchor Packaging, Inc.*, No. 1:13-CV-316, 2014 WL 856371, at *9 (N.D. Ind. Mar. 5, 2014) (collecting cases and noting that district courts look to whether the first-filing party received "specific concrete indications that a suit by the defendant was imminent"). An action will be deemed anticipatory and dismissed where "it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995). "Forum shopping" can be a concern, but may not be enough by itself to disregard the first-to-file rule. "[T]he first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Epm'rs Ins. of Wausau*, 522 F.3d at 276.

On the surface, the facts suggest that the Court should disregard the first-to-file rule because this is a classic anticipatory filing designed to deprive AFS of its choice of forum in Connecticut. After all, Harrison is a Connecticut resident, his alleged breaches occurred in, or have a substantial connection to, Connecticut and it is reasonable to expect that AFS would sue Harrison in Connecticut. Moreover, AFS provided Vander Waal and Harrison draft complaints and firm dates on which they would be filed in the respective courts, and Vander Waal and Harrison responded with this preemptive declaratory action. *See Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*, NO. 11-1266 GMS, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013) (finding the

declaratory judgment action to be anticipatory of patent infringement litigation because the parties had engaged in discussions regarding the infringement allegations, the defendant provided the plaintiff a draft complaint and warned that it would be filed if the parties could not resolve the matter by a certain date, and no resolution had been reached by that date); *242 Partners, L.P. v. Gelb*, No. 12 CV 2561 (HB), 2012 WL 2309060, at *2 (S.D.N.Y. June 18, 2012) (concluding that "[t]he instant case was clearly an anticipatory filing," because the defendant had provided the declaratory judgment plaintiff both a draft complaint and a date-specific threat of litigation). On the other hand, the instant case involves unique circumstances—AFS threatened to sue Vander Waal in both Connecticut and Michigan, and had thus already anticipated its own litigation here. This district also has more than a de minimis connection to the Harrison breach of contract and related claims that AFS seeks to assert in Connecticut. According to AFS's own allegations, Harrison is either employed by, or has some other business relationship with, Vander Waal, who resides in this district. Harrison also receives his work-related instructions from Vander Waal in Michigan, and the bills for Harrison's services are generated and sent by Vander Waal in Michigan. Most important, however, is the substantial factual (and perhaps legal) overlap between the claims and issues in AFS's Michigan and Connecticut complaints. While the complaints may not involve a strict identity of issues that presents the risk of inconsistent judgments, they do involve common facts. For example, in both draft complaints, AFS refers to the prior litigation with Vander Waal, the Settlement Agreement, and Vander Waal's performance of services for AFS's customers. (*Compare* dkt. # 8-4 at 91–94 *with* dkt. # 8-5 at Page ID 105–06.) Thus, both cases will almost certainly involve issues regarding the nature of AFS's business, its relationship with its customers, and whether Vander Waal is a competitor of AFS.

Based on the foregoing considerations, the Court concludes that declining to apply the first-to-file rule in this case would be contrary to its purposes of promoting judicial efficiency and avoiding conflicting judgments. *See Cedars-Sinai Med. Ctr.*, 125 F.3d at 769; *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) ("The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources."). Conversely, applying the rule in these unique circumstances will allow all issues to be tried in one action without risk of conflicting judgments and will benefit all parties by eliminating duplicative litigation efforts and minimizing expenses. Accordingly, the Court will apply the first-to-file rule.

2.  **Transfer Pursuant to § 1404(a)**

A court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[1] "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988) (internal quotation marks omitted). The moving party bears the burden of showing that another district is a more convenient forum than the chosen forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995); *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal.

---

[1] Three requirements must be satisfied before a court may transfer a case under § 1404(a): "(1) the action could have been brought in the transferee court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). Vander Waal and Harrison suggest that AFS could not have brought the Harrison breach of contract and related claims in Michigan because the Connecticut court would not have diversity jurisdiction. This argument lacks merit, as Vander Waal and Harrison admit in their own pleading in this case that AFS is a Delaware corporation with its principal place of business in Arizona. (Dkt. # 1 at Page ID 2, ¶ 3.) The fact that AFS does substantial business in Connecticut is immaterial for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1); *Regions Bank v. Britt*, 642 F. Supp. 2d 584, 589 (S.D. Miss. 2009) ("[W]hile Regions obviously does substantial business in Mississippi, that fact does not make it a citizen of Mississippi for purposes of diversity jurisdiction."). Because Vander Waal and Harrison do not argue that Connecticut lacks personal jurisdiction over Vander Waal, the Court assumes that Vander Waal would be subject to personal jurisdiction in that state.

8

2001) (citing William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 4:296 at 4-78 ). A court should deny a motion to transfer venue if the transfer would merely shift the inconvenience from one party to the other. *Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S. Ct. 805, 824 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to forum likely to prove equally convenient or inconvenient.").

In deciding a motion under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness. . . ." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Some of the relevant factors include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006) (quoting *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)).

### a. Plaintiffs' Choice of Forum

In a typical case not involving a forum-selection clause, a district court is generally required to give at least some weight to the plaintiff's choice of forum. *Atl. Marine Constr. Co. v. United States Dist. Court for the W. Dist. of Tex.*, __ U.S. __, 134 S. Ct. 568, 581 n. 6 (2013). Courts usually accord the plaintiff's choice of forum "paramount consideration," unless the plaintiff has no connection to the forum and/or the forum has no connection to the litigation. *See Morrison v. Lindsey Lawn & Garden, Inc.*, No. 13-1467, 2014 WL 831570, at *3 (E.D. Pa. Mar. 4, 2014) (noting that the plaintiff's choice of forum receives less deference if the plaintiff resides outside of the venue

9

and none of the operative facts giving rise to the litigation occurred there); *Pawlik v. AmeriLife Grp., LLC*, No. 13-80172-CIV, 2014 WL 793080, at *9 (S.D. Fla. Feb. 25, 2014) (stating that while a non-resident's chosen venue is usually afforded less weight, it is not discounted completely). Many courts also decline to give the plaintiff's choice of forum any significant weight if the action is a declaratory judgment action. *See Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, No. 2:11-cv-04099-NKL, 2011 WL 4088901, at *2 (W.D. Mo. Sept. 14, 2011) ("Deference to a plaintiff's choice of forum is lessened if the action is a declaratory judgment action."); *Piedmont Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc.*, 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005) (stating that the weight accorded the plaintiff's choice of forum "is lessened where a plaintiff files a preemptive declaratory judgment action in order to deprive the natural plaintiff–the one who wishes to present a grievance for resolution by a court, of its choice of forum" (internal quotation marks omitted)).

AFS argues that the Court should give Vander Waal and Harrison's choice of venue no weight in its analysis because this case is an anticipatory declaratory judgment action designed to deprive AFS of its chosen forum, and Harrison has no connection with this venue because he is not a Michigan resident. Because Vander Waal resides in this forum and the Harrison breach of contract and related claims have at least a minimal connection with this forum, the Court will not completely disregard Vander Waal and Harrison's choice of forum, but will give it only minimal weight. *See Hartford Fire Ins. Co. v. Eagle Equity Serv.*, No. 1:09-cv-7091, 2010 WL 2541978, at *2 (N.D. Ill. June 17, 2010) (concluding that the plaintiff's choice of forum in a declaratory judgment action weighed "only slightly against . . . transfer").

**b.    Convenience of the Parties**

The convenience of the parties factor weighs against transfer. Vander Waal is a Michigan citizen and resides in Michigan and, therefore, this district is a more convenient forum for Vander

Waal than Connecticut. Harrison is a citizen and resident of Connecticut. While Connecticut is obviously a more convenient forum for Harrison, Harrison's submission to jurisdiction in Michigan indicates that Michigan is not an inconvenient forum for him. AFS argues that it has no ties to Michigan concerning Harrison's former employment with AFS, but notes that it has an office in Connecticut, through which Harrison and Vander Waal were both employed. However, AFS's principal place of business is in Arizona. In addition, the financial hardship of litigating in a particular forum is an aspect of convenience. *See Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, No. 12-775-LPS, 2013 WL 5461876, at *3 (D. Del. Sept. 30, 2013) (noting that litigating in Delaware would pose no financial hardship to either party); *Country Maid, Inc. v. Haseotes*, 312 F. Supp. 1116, 1118 (E.D. Pa. 1970) ("This vast difference in size and scale of [the parties'] operations necessarily magnifies the extent of any inconvenience the plaintiff might experience as a result in favor of the defendants."). Although there is no evidence in the record regarding the parties' respective financial resources, it is safe to assume that the financial impact on AFS—a company with "offices all over the country," http://www.afsi.com/about/ (last visited 4/2/14)—of litigating in Michigan would be much less than the financial impact on Vander Waal of litigating in Connecticut.[2]

### c. Convenience of the Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *see also Gerling Am. Ins. Co. v. FMC Corp.*, No. 97 Civ. 6473(LMM), 1998 WL 410898, at *3 (S.D.N.Y. July 22, 1998).

---

[2] Although litigating in Michigan would arguably be more of a financial burden on Harrison, the Court notes that Harrison and Vander Waal are represented by the same counsel, and Harrison apparently prefers to litigate in Michigan.

However, "[i]t is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994); *see also Robinson Steel Co. v. Caterpillar Inc.*, No. 2:10 CV 438, 2011 WL 923415, at *6 (N.D. Ind. Mar. 14, 2011) ("Because party witnesses normally must appear voluntarily, their convenience is afforded less weight than that of nonparty witnesses." (internal quotation marks omitted)). The party seeking transfer may not simply claim that transfer to another forum would be more convenient for the witnesses. Rather, it "'must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district.'" *Id.* (quoting *B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 931 (W.D. Tenn. 2013)). To substantiate a claim of inconvenience to witnesses, a party should provide each witness's name and a summary of the anticipated testimony to enable the court to assess the significance of the testimony. *See Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp.2d 934, 937 (E.D. Mich. 2001).

Although AFS argues witness inconvenience, it specifically identifies only AFS employees Joe Green and Thomas Lane, and Harrison himself, as witnesses located in Connecticut who would be inconvenienced by trial in Michigan. As noted, however, the convenience of employee-witnesses is generally given minimal consideration, and the Court presumes that Harrison deems this forum convenient, as he filed his complaint here. As for third party witnesses, AFS mentions its current and former customers located in Connecticut, New York, Pennsylvania, and other surrounding states, but provides neither names nor summaries of the potential witnesses' testimony to enable the Court to assess the materiality of their testimony. *See Sportsman Channel, Inc. v. Small Grp., Inc.*, No. 08-CV-65, 2008 WL 2909811, at *5 (E.D. Wis. July 25, 2008) ("Simply asserting that someone will testify, absent specifics and the materiality of their testimony, does not satisfy the burden nor

12

weigh in favor of transfer."). In light of the minimal detail AFS offers to establish this factor, the Court concludes that it deserves little, if any, weight in the analysis.

Relatedly, AFS argues that the availability of compulsory process and the cost of obtaining witnesses favors Connecticut as the appropriate forum. "The availability of compulsory process is an important consideration in transfer motions." *Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 5:12-CV-1766 (LEK/ATB), 2013 WL 4805801, at *20 (N.D.N.Y. Sept. 9, 2013) (internal quotation marks omitted). As is the case with witness convenience, this factor is generally only relevant to third-party witnesses because employees of a party are usually deemed available by virtue of the employment relationship. *Id.* Because AFS provides no specific information about third-party witnesses or the substance of their testimony, the Court has no way of assessing the importance of their testimony to the case to determine whether their live testimony is important. Moreover, AFS has not shown that any particular witness will refuse to testify absent subpoena power, nor does it explain why the deposition testimony of such witnesses will not suffice for trial. *See Malibu Boats, LLC*, 2014 WL 202379, at *5–6; *Int'l Controls & Measurements*, 2013 WL 4805801, at * 21; *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 12-cv-1479, 2013 WL 4496644, at *6 (D. Del. Aug. 21, 2013). Finally, AFS has not shown that the cost of obtaining witnesses' attendance for trial in Michigan would be significantly greater, or even greater, than the cost of obtaining their attendance for trial in Connecticut. In sum, while these considerations may favor transfer, they will be given only minimal weight.

### d. Location of Sources of Proof

AFS contends that Connecticut is a more appropriate forum because all of the documents pertaining to Harrison's employment history with AFS and all of Harrison's day-to-day work product since his departure from AFS are located in Connecticut. However, Vander Waal and

13

Harrison respond that documents pertaining to Harrison's work for Vander Waal are also located in Michigan.

"Typically, the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); *see also Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, No. 1:11-cv-1579-JMS, 2013 WL 212929, at *5 (S.D. Ind. Jan. 18, 2013) ("[G]iven advances in modern technology relating to the exchange of documents and information, the location of relevant documents does not carry as much weight in the transfer analysis."). It is not clear why some of the documents AFS references, such as Harrison's employment records, are relevant to the case. Regardless, AFS "does not demonstrate that these documents are immovable, unretrievable, or that production of them in [Michigan] would be burdensome." *Sportsman Channel, Inc.*, 2008 WL 2909811, at *5. Therefore, the Court gives this factor no weight in the transfer analysis.

    e. **Practical Problems Associated with Trying the Case Most Expeditiously and Inexpensively**

Citing "the location of the parties, the witnesses, and the relevant proof," (dkt. # 8 at Page ID 77), AFS contends that the case can be tried most expeditiously and inexpensively in Connecticut. Other than citing factors the Court has already considered, AFS offers no substantive argument why trial in Connecticut would be more expeditious or inexpensive. In contrast, for the reasons discussed above regarding the first-to-file rule, trying the Harrison breach of contract and related claims *and* AFS's other claims against Vander Waal in Michigan in one proceeding will promote judicial economy and save time and expense for the parties.

#### f.     **Familiarity with Applicable Law**

AFS contends that Connecticut is a more appropriate forum than Michigan for deciding the Harrison breach of contract and related claims because AFS's Connecticut complaint asserts claims for breach of contract and violation of the Connecticut Uniform Trade Secrets Act and the Connecticut Unfair Trade Practices Act, and it is reasonable to assume that a district judge in the District of Connecticut will be more familiar with Connecticut law than a district judge in the Western District of Michigan. In general, the court that sits in the state whose substantive law will govern the case is in the best position to apply that state's laws. *See Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992) (citing, among others, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). "However, 'where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts.'" *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006) (quoting *Strick v. FreeHand Sys., Inc.*, No. 02 D 1568, 2003 WL 1581741, at * 5 (N.D. Ill. Mar. 27, 2003)). Nothing in the record suggests that Connecticut contract law or the Connecticut statutes are materially different from Michigan contract law or similar Michigan statutes. *See, e.g.*, M.C.L.A. § 445.1905 (Michigan Uniform Trade Secrets Act). Moreover, AFS does not argue that the legal questions raised in its claims are either complex or unsettled. Therefore, this factor is neutral.

#### g.     **Interest of Justice**

Finally, reiterating its argument that this action is merely an improper anticipatory declaratory judgment action designed to deprive it of its choice of forum, AFS contends that the interest of justice requires transfer to Connecticut. AFS asserts that the only parties who will benefit from retaining the case in this venue are Vander Waal and Harrison, as well as their Michigan counsel, and they should not be rewarded for their improper conduct.

While AFS's argument has some merit, the Court is more persuaded by concerns for judicial economy which, for the reasons explained above, favor retaining all claims against Vander Waal and Harrison in one court. *See Victaulic Co. v. Eastern Idus. Supplies, Inc.*, No. 6:13-01939-JMC, 2013 WL 6388761, at *4 (D.S.C. Dec. 6, 2013) ("[T]he interest of justice factor (i.e., promotion of judicial economy, avoidance of inconsistent judgments) 'may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction.'") (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 627, 635 (E.D. VA. 2006)); *Constellation Leasing, LLC v. Oxford Aviation, Inc.*, No. 08-CV-6558, 2010 WL 1323566, at *3 (W.D.N.Y. Mar. 29, 2010) ("Combining the [two] cases before one court who can supervise discovery, determine motions and conduct a trial on the merits if necessary promotes judicial economy and efficiency.").

Having considered the foregoing factors, the Court concludes that they weigh against transferring the Harrison breach of contract and related claims to the District of Connecticut.

### III. CONCLUSION

For the foregoing reasons, the Court will deny AFS's Motion to Transfer Venue or, in the Alternative, to Dismiss.

An appropriate order will enter.


Dated: April 4, 2014                        /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE